1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TIMOTHY DAUBERT, | ) | 1:08cv01611 DLB |
| | ) | |
| | ) | |
| | ) | |
| | ) | ORDER GRANTING DEFENDANT'S |
| Plaintiff, | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| v. | ) | (Document 42) |
| | ) | |
| CITY OF LINDSAY, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant City of Lindsay ("Defendant") filed the instant motion for summary judgment on October 9, 2009.  The matter was heard on November 13, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge.[1] Michael Maurer appeared on behalf of Defendant. Plaintiff Timothy Daubert ("Plaintiff") appeared in pro se.

## BACKGROUND

Plaintiff, proceeding pro se and in forma pauperis, filed the instant action under the Americans with Disabilities Act ("ADA") on October 24, 2008.  He filed a First Amended Complaint ("FAC") on December 1, 2008.  Plaintiff, who is confined to a wheelchair, alleges the following ADA violations inside McDermont Field House ("McDermont"):

---

[1] The parties consented to the jurisdiction of the Magistrate Judge for all purposes.

1

1.      The toilet paper racks in both the men's and women's restroom were 72 inches high.  He alleges that on March 10, 2008, he and Don Kaku went to McDermont to take measurements inside the restrooms.  Plaintiff had to use the restroom but could not reach the toilet paper.

2.      One ramp, which is very steep, only has one handrail.

3.      There was a disability lift to take disabled individuals to the top floor, but it wasn't installed.  Plaintiff alleges that he was invited to a function on the top floor of McDermont, but he had to decline because there was no lift.

4.      There were no handicap parking areas.  Plaintiff alleges that on October 18, 2008, he was invited to take pictures at a class reunion held on the top floor of McDermont.  Plaintiff states that he had to decline because there were no handicap parking areas.

Plaintiff requested a temporary injunction to cease all events at McDermont until the violations were fixed.  He also requested that the injunction remain in place until he could thoroughly inspect McDermont, as he believed that there was a "strong likelihood" of more violations.  FAC, at 3.  There is no claim for damages.

Defendant filed its answer on March 19, 2009.

On May 11, 2009, Plaintiff requested that the Court issue an order allowing him to inspect McDermont.  He stated that on May 8, 2009, he inspected the violations listed in his FAC, and found that "the City of Lindsay had fixed the items I mentioned."

Also on May 11, 2009, the parties appeared at a Scheduling Conference and agreed to a joint inspection of McDermont.

On July 21, 2009, Plaintiff filed his portion of the Further Joint Scheduling Report and cited additional violations.  The Scheduling Order issued on July 30, 2009.  Trial is currently set for July 2010.

Defendant filed the instant motion for summary judgment on October 9, 2009.  Plaintiff filed a late opposition on November 6, 2009.  On November 12, 2009, Defendant filed its reply.[2]

---

[2] Defendant's request that the Court strike Plaintiff's untimely opposition is denied based on Plaintiff's status as a pro se litigant and the complexities of opposing summary judgment.

## UNDISPUTED MATERIAL FACTS

1. All toilet paper dispensers are not higher than 31 inches. Declaration of George Lowery ("Lowery Dec."), ¶ 6.

2. All ramps that are part of an accessible route have handrails on both sides. Lowery Dec., ¶ 7.

3. There is an elevator installed which is fully functioning and operable. Lowery Dec., ¶ 8.

4. There are handicapped parking spaces in front of McDermont Field House. Lowery Dec., ¶ 9.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e). As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

3

1  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

2  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

3    In the endeavor to establish the existence of a factual dispute, the opposing party need not

4  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

7  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

8  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

9  amendments).

10    In resolving the summary judgment motion, the court examines the pleadings, depositions,

11  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56 (c).

12  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all

13  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

14  favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

15  369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and

16  it is the opposing party's obligation to produce a factual predicate from which the inference may

17  be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

18  810 F.2d 898, 902 (9th Cir. 1987).

19    Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

20  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

21  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

23  **DISCUSSION**

24    Defendant's motion for summary judgment is based on (1) Plaintiff's May 2009 admission

25  that the four violations cited in the FAC have been fixed; and (2) evidence confirming compliance.

26    In this Title II ADA action, "design, construction, or alteration of facilities in conformance

27  with the. . . Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

28

4

1  (ADAAG) (appendix A to 28 C.F.R. Part 36) shall be deemed to comply with the requirements of

2  this section with respect to those facilities."  28 C.F.R. § 35.151(c).

3     There is no dispute that the toilet paper dispensers have been fixed, nor is there any

4  dispute that the disability lift has been installed.  The following analysis therefore focuses on the

5  two remaining alleged violations- the lack of a handrail on one ramp and the handicap parking

6  spaces.

7  A.     Plaintiff's Admissions

8     Defendant contends that Plaintiff's May 2009 statement that he inspected McDermont and

9  found that the items were fixed should be deemed a judicial admission.

10     The Court may, in its discretion, deem a statement of fact contained in a brief a judicial

11  admission.  American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988).

12  However, where the "party making an ostensible judicial admission explains the error in a

13  subsequent pleading or by amendment, the trial court must accord the explanation due weight..."

14  Kosen v. Ruffing, 2009 WL 56040, *8 (S.D. Cal. 2009) (citing American Title at 227).

15     Plaintiff concedes that he made the admission, but contends that he made the statement

16  under emotional duress, when he felt helpless, angry and frustrated that Defendant would not let

17  him inspect McDermont.  Regardless of the circumstances of the statement, the Court will not

18  exercise its discretion to deem the statement an admission.  Plaintiff is proceeding pro se and this

19  motion can be decided on the merits.

20  B.     Defendant's Compliance

21     Defendant next argues that George Lowery, the Building Official for the City of Lindsay,

22  inspected McDermont and submitted a declaration indicating that each alleged violation is in

23  conformance with the ADAAG.

24     1.   *Two Handrails on Ramp*

25     It is undisputed that all ramps in McDermont with either six inches of rise or 72 inches of

26  horizontal projection have handrails on both sides.  Lowery Dec., ¶ 7.  Indeed, at the hearing,

27  Plaintiff acknowledged that a second handrail was installed on the ramp identified in his FAC.

28

1    In his opposition, Plaintiff attempts to create a factual dispute by citing violations beyond

2    those alleged in the FAC.  Specifically, while the FAC alleges that one ramp does not have a

3    second handrail and requests an injunction to fix this, Plaintiff now cites numerous ramps that are

4    in violation of rise/length requirements.

5    The issues on summary judgment are framed by the complaint.  Indeed, the issues in the

6    complaint guide the parties during discovery and put the defendant on notice of what evidence is

7    necessary to defend against the allegations.  For these reasons, a plaintiff cannot oppose summary

8    judgment based on a new theory of liability because it would essentially blind side the defendant

9    with a new legal issue after the bulk of discovery has likely been completed.  See eg. Coleman v.

10   Quaker Oats Co., 232 F.3d 1271, 1292-1293 (9th Cir. 2000) (where plaintiff did not include legal

11   theory in complaint and did not identify the theory at any time prior to summary judgment, she

12   could not rely on the theory for the first time during summary judgment).

13   Plaintiff's contention that ramps are in violation of the length/rise requirement, then, are

14   not properly before the Court.  See Klein v. Boeing Co., 847 F.Supp. 838, 844 (W.D.Wash.1994)

15   ("Klein never asserted this claim prior to his opposition to Boeing's motion for summary

16   judgment, nor has he moved to amend his complaint to add such a claim. Thus, this claim is not

17   properly before the court.")

18   Plaintiff argues that the length/rise issue is merely an extension of the issues in his FAC.

19   He bases his argument on his statement in the FAC that there was a "strong likelihood" of more

20   violations.  However, a "strong likelihood" of additional violations is not an allegation that allows

21   future violations to be brought within the purview of the FAC.  In other words, even though

22   Plaintiff stated in the FAC that he believed additional violations were likely, his belief does not

23   translate into sufficient allegations about the length/rise requirements of the ramps.

24   As Plaintiff's length/rise arguments cannot be used to defeat summary judgment,

25   Defendant is entitled to summary judgment on this issue.

26   2.    *Parking Spaces*

27   Plaintiff originally alleged that there were no handicap parking spaces at McDermont.  The

28   parties now agree that there is on-street handicapped parking.  However, Plaintiff argues that the

6

on-street parking spaces are not in compliance with the ADAAG and thus do not resolve the issue raised in the FAC.  Although not entirely clear, it seems that Plaintiff alleges that the length of the landings on the ramps is improper and contends that a bus stop is improperly located.

The ADAAG does not contain requirements for on-street parking.  The requirements are specific to parking lots and on-site parking, neither of which are present at McDermont.  Since there is no legal standard and no guidelines to follow, Defendant contends that it is entitled to judgment as a matter of law.  Plaintiff, however, argues that once Defendant decides to offer on-street parking, it must comply with ADAAG requirements.

The Court first notes that while the FAC alleged that Plaintiff was unable to participate in an event held at McDermont because of the lack of handicap parking spaces, he makes no similar allegation with respect to the alleged inadequacies of the on-street spaces.  At a bare minimum, standing requires that plaintiff "show that [he] suffered an injury in fact, there was a causal connection between the injury and the conduct complained of, and the injury is likely to be redressed by a favorable decision."  Davis v. Yageo Corp., 481 F.3d 661, 673 (9th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

In any event, the Court has not found any instances of ADA liability where there is not a specific, corresponding regulation.  Although Plaintiff asks the Court to expand the ADAAG parking requirements beyond the specific language of the guidelines, it declines to do so.  First, extending the lot/on-site parking requirements to on-street spaces would impose potential liability where there is no guiding regulation.  Where entities are not on notice that a design may be in violation of the ADA, the imposition of liability is unwarranted.

Second, it would be improper to assume that the same requirements for lot/on-site parking would apply to on-street parking.  There are likely different considerations for on-street parking, the most obvious of which is the smaller amount of space within which to work imposed by the characteristics of an active street.

Defendants are therefore entitled to summary judgment on the parking space issue.

1

## **<u>ORDER</u>**

2        The Court therefore GRANTS Defendant's motion for summary judgment.  This order

3  addresses only the four issues raised in Plaintiff's First Amended Complaint.  The complaint

4  sought only injunctive relief and it is therefore moot.

5        It is hereby ORDERED that JUDGEMENT be entered in favor of DEFENDANTS

6  DISMISSING THIS ACTION AS MOOT.

7

8      IT IS SO ORDERED.

9   **Dated:    November 23, 2009**            _____/s/ Dennis L. Beck_____
                                             UNITED STATES MAGISTRATE JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28